IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM JAMAL TWIGGS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF | : | NO. 10-1498 |
| SOCIAL SECURITY ADMINISTRATION | : | |

**REPORT AND RECOMMENDATION**

M. FAITH ANGELL  December 23, 2010
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

This is an action brought pursuant to 42. U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff William Jamal Twiggs' applications for Disability (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. Presently before this Court are the parties' pleadings, including Plaintiff's Motion for Summary Judgment or, in the alternative, his Motion for Remand, and his Brief and Statement of Issues in Support of Request for Review[1] and the Commissioner's Response to Request for Review.[2] On October 28, 2010, counsel presented oral argument. For the reasons which follow, I recommend that the relief sought by Plaintiff be granted and that this matter be remanded to the

---

[1] Hereinafter "Plaintiff's Brief".

[2] The Record, a Complaint, an Answer, Plaintiff's Motion for Summary Judgment or, in the alternative, Plaintiff's Motion for Remand, Plaintiff's Brief and Statement of Issues in Support of Request for Review and Defendant's Response to Request for Review of Plaintiff's have been filed and reviewed in this action.

Commissioner for further review.

## II. BACKGROUND AND PROCEDURAL HISTORY

Mr. Twiggs was born on March 16, 1958. *See Administrative Record*[3] at 88. He has a high school education and completed one year of college. *See Record* at 27. Mr. Twiggs has past relevant work experience as an electronic assembler, electronic technician, loom operator and building maintenance repairer. *See Record* at 39. Vocational Expert (VE) Gary Young identified Mr. Twiggs' past positions as semi-skilled to skilled and light to medium. *Id.* Plaintiff alleges an onset disability date of November 1, 2007. *See Plaintiff's Brief* at 2. He argues he is unable to work because he suffers from "multiple severe impairments, including bilateral ulnar neuropathy; mild right carpal tunnel syndrome (CTS); cervical radiculopathy; a comminuted fracture involving the third metacarpal head of the right hand; degenerative disease of the shoulders, wrists, knees and ankles; status post prostate surgery; major depressive disorder with psychotic features; rule out post traumatic stress disorder (PTSD); and substance dependence in remission." *Id.*

Plaintiff protectively filed a Title II application for a period of disability and DIB benefits and a Title XVI application for SSI on March 24, 2008. *See Record* at 14. The claims were initially denied on June 24, 2008, and a request for a hearing was timely filed. *Id.*

A hearing was held on January 29, 2009, before Administrative Law Judge (ALJ) Deborah Mande in Philadelphia, Pennsylvania. *See Record* at 22. Represented by his attorney, Joseph Finer, Esquire, Plaintiff testified, and Gary Young testified as a VE. *Id.* On March 26,

---

[3] Hereinafter the "Record".

2

2009, ALJ Mande issued a Decision in which she found that Mr. Twiggs "has the following severe impairments; a history of prostate cancer, cervical degenerative disc disease, and right rotator cuff tendinopathy." *Id.* at 17. However, the ALJ further found that, despite these impairments, Mr. Twiggs is not disabled within the meaning of the social security Act because he maintains the Residual Functional Capacity (RFC) to perform a full range of light work and is capable of performing past relevant work as an electronics assembler, an electronics technician, and a loom operator. *Id.* at 17-20.

Mr. Twiggs sought review by the Appeals Council, which was denied on January 29, 2010. *Id.* at 2-5. On April 8, 2010, Plaintiff filed this action alleging that the Commissioner's final decision is based on the application of incorrect legal standards. *See Plaintiff's Brief* at 3.

### III. SOCIAL SECURITY DISABILITY LAW

#### A. Disability Determination

The Social Security Act authorizes several classes of disability benefits, including DIB and SSI benefits. In order to qualify for benefits, a person must be "disabled" under the Social Security Act and the accompanying regulations.

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); 42 U.S.C. § 423(d)(1) (1982). A claimant can establish a disability in either of two ways: (1) by producing medical evidence that one is disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1(2000), or (2) by demonstrating

an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A). For the purposes of this disability determination, "[a]n individual shall not be considered to be disabled...if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(c).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether or not a claimant is under a disability. *See* 20 C.F.R. § 416.920. Step One requires that an individual who is working not be found to be disabled regardless of medical findings. *See* 20 C.F.R. § 416.920(b). Step Two involves the evaluation of severe impairments. *See* 20 C.F.R. § 416.92(c). Step Three requires a determination as to whether the claimant has an impairment or a combination of impairments which meets or equals a listed impairment in Appendix 1. *See* 20 C.F.R. § 416.920(d). Step Four requires that an individual who can perform past relevant work not be found to be disabled. *See* 20 C.F.R. § 416.920(e). Finally, Step Five requires that if an individual cannot perform past relevant work, other factors be considered to determine if other work in the national economy can be performed. *See* C.F.R. § 416.920(f); *see also Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *See Plummer*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F2d 1058, 1066 (3d Cir. 1993). The ALJ's conclusions must be accepted unless they are without basis in the Record. *See Torres v. Harris*, 494 F.Supp. 267, 301 (E.D. Pa. 1980), *aff'd.* 659 F.2d 1071 (3d Cir. 1981).

### B. Judicial Review of Disability Decisions

The role of this Court on judicial review is to determine whether there is substantial evidence to support the Commissioner's Decision. *See Fargnoli*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir.2000). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F3d 310, 316 (3d Cir. 2000). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. *Id.*

It is not the role of this Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. *See e.g. Burns v. Barnhart*, 312 F.3d 113, 188 (3d Cir. 2020). Upon appeal to this Court, the Commissioner's factual determinations, if supported by substantial evidence, shall be conclusive. The conclusiveness applies both to findings of fact and to inferences reasonably drawn from that evidence. *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001). ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.")

### IV. THE ALJ'S DECISION

At the January 29, 2009 hearing, the ALJ received medical evidence, heard Plaintiff's testimony and received testimony from a VE. After considering all the evidence of record, the ALJ concluded that Mr. Twiggs was not under a disability within the meaning of the Social Security Act from November 1, 2007 through the date of her Decision. *See Record* at 14. The ALJ found that:

> 1. The [Plaintiff] meets the insured status requirements of the Social

> Security Act through December 31, 2011.
>
> 2. The [Plaintiff] has not engaged in substantial gainful activity since November 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [Plaintiff] has the following severe impairments: a history of prostate cancer, cervical degenerative disc disease, and right rotator cuff tendinopathy (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).
>
> 4. The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart. P, Appendix 1 (20 CFR 404.1525, 416.925 and 416.926).
>
> 5. After careful consideration of the entire Record, I find that the [Plaintiff] has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).
>
> 6. The [Plaintiff] is capable of performing past relevant work as an electronics assembler, an electronics technician, and a loom operator. These occupations do not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The [Plaintiff's] history of substance abuse is not material to this finding.
>
> 8. The [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 1, 2007 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Record* at 14-21. In evaluating the medical evidence, the ALJ determined:

> The medical evidence shows that the [Plaintiff] was admitted to the Fairmount Behavioral Health System on December 3, 2007. There the [Plaintiff] initially presented with a depressed mood, anhedonia, feeling of hopelessness, and suicidal ideation with a plan. A mental status examination revealed that the [Plaintiff] had a depressed mood and flat affect. His thought process was logical, cogent, goal directed; his judgment was intact; his insight was fair; and he was fully oriented. Initially the [Plaintiff] was irritable and demonstrated

decreased cooperation. he was guarded and suspicious and internally preoccupied. He was hyperverbal, paranoid with persecutory delusions and at times socially isolated. With treatment the [Plaintiff's] sleep improved, but he remained depressed, anxious, and superficial. At discharge, on January 4, 2008, the [Plaintiff's] symptoms were in the moderate to serious range, *i.e.* GAF of 50. On the day of discharge, the [Plaintiff] was to be evaluated for outpatient treatment at The Wedge Medical Center [citation omitted].

At the Wedge the [Plaintiff] reported that he had experienced a number of stressors in the last year: cancer, physical assault, loss of a job, and loss of a relationship. He further said that he was experiencing symptoms that included a depressed mood and sleep and appetite disturbances. The [Plaintiff] asserted that he last used alcohol and illicit drug 45 days earlier. The [Plaintiff] was diagnosed with bipolar disorder/chronic mood disturbance with symptoms that were moderate, *i.e.* GAF of 53 [citation omitted].

The evidence does not include reports of the [Plaintiff's] ongoing treatment for mental impairments. However, on June 4, 2008, when he was evaluated for the Pennsylvania Bureau of Disability Determination by Marged Lindner, Ph.D., the [Plaintiff] said that he was going to The Wedge on a weekly basis and attending AA meetings. At this evaluation, the [Plaintiff] complained of episodes of manic behavior, lack of motivation, tendency to withdraw and sleep, and episodes of paranoia. The evaluating psychologist noted that the [Plaintiff's] speech was articulate, coherent, and organized. His vocabulary was good but he was sometimes a bit wordy. On mental status examination, Dr. Lindner noted that the [Plaintiff] was able to maintain attention. No problems with memory or concentration were mentioned or observed. Dr. Lindner's diagnosis of the [Plaintiff] was bipolar disorder [citation omitted].

Based on the medical evidence and lack thereof, I find that the [Plaintiff] has the following mental limitations set forth in Part B of the mental listings: mild restrictions of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. The [Plaintiff] reported that he goes to AA meetings and at home he washes his own clothes, cooks uncomplicated meals, cleans his own room shops, and takes out the trash [citation omitted]. There is nothing in subsequent records that shows that the [Plaintiff's] ability to function is diminished. He has

reported having a strong, supportive relationship with his former partner. He also said that he has good to excellent relationships with his four children [citation omitted]. The [Plaintiff] indicated that he reads and watches television programs and movies. Although he has sometimes reported having problems with memory and concentration, the reports of mental status examinations have shown that the [Plaintiff's] memory and concentration were intact.

*Record at* 17-18. Because the ALJ found that Mr. Twiggs' impairments did not equal or meet the requirements of a Listing, she then determined whether or not Plaintiff retained the RFC to perform other work existing in significant numbers in the national economy. In determining Mr. Twiggs' RFC, the ALJ stated the following:

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR §§ 404-1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
> * * * * *
> The [Plaintiff] testified that he the medication he was assaulted in March of 2007 and since then he has had hand, arm, and neck pain [sic]. He further testified about having a loss of fine motor skills and no strength in his right upper extremity. He said that he is under the care of neurologist [sic]. The [Plaintiff] testified that he receives ongoing care at The Wedge.
>
> After careful consideration of the evidence, I find that the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> After the hearing the record was left open for the receipt of additional medical evidence. Records from Jefferson Family Medicine were received and entered into the records as Exhibit 13F. This new evidence reveals that the [Plaintiff] reported having 95% improvement in his right shoulder symptoms. No new evidence from

8

the Wedge was received.

*Record* at 19-20. The ALJ went on to conclude that Mr. Twiggs is capable of performing past relevant work as an electronics assembler, electronics technician, and a loom operator. *See Record* at 20. Present at Mr. Twiggs' hearing was VE Gary Young. Relying on his testimony, the ALJ determined:

> Attending the hearing and testifying was Gary Young, an impartial certified vocational expert. The vocational expert was familiar with the [Plaintiff's] past work history. The Administrative Law Judge asked the vocational expert to classify the [Plaintiff's] work according to the *Dictionary of Occupational Titles*. The witness testified that the [Plaintiff's] jobs as an electronics assembler, an electronics technician, and a loom operator are all light exertional level skilled or semi-skilled occupations. The [Plaintiff's] job doing building maintenance/repair is medium exertional level skilled occupation
>
> I find that the cited occupational information is consistent with occupational information as found within the United States Department of Labor *Dictionary of Occupational Titles* (Social Security Ruling 00-4p). Therefore, because the [Plaintiff] is limited to doing light exertional level work, he retains the capacity to return to his past relevant work as an electronics assembler, an electronics technician, and a loom operator.

*See Id.* Accordingly, Mr. Twiggs was not found to have been under a disability, as defined in the Social Security Act, from November 1, 2007 through the date of the ALJ's decision. *See Id.*

## V. DISCUSSION

Plaintiff argues "that the Commissioner's denial of benefits is not supported by substantial evidence and that the Commissioner applied improper legal standards in denying him benefits." *Plaintiff's Brief* at 3. Specifically, Plaintiff argues that the ALJ's finding regarding Mr. Twigg's alleged mental impairment was not supported by substantial evidence; the ALJ's

9

Mental RFC Assessment was flawed; the ALJ erred in failing to impose manipulative limitations, and, finally, that the Commissioner's finding of not disabled is not supported by substantial evidence. *Id.* at 4-17.

**A. <u>Mental Impairment Findings</u>**

Plaintiff maintains that "[t]he ALJ's finding that Plaintiff does not suffer from a severe mental impairment is not supported by substantial evidence and represents a reversible error of law." *Id.* at 4. Plaintiff cites evidence of his treatment at Fairmount Behavioral Health System and The Wedge in addition to evaluations by Dr. Marged Lindner, Dr. David Austria, and Dr. Anthony Galdieri in support of his claim that the ALJ's finding was erroneous. *Id.* at 4-9.

A June 4, 2008 Clinical Psychological Disability Evaluation of Mr. Twiggs performed by Marged Lindner, Ph.D. produced the following report:

> On mental status evaluation, this [Plaintiff] is a slender man of medium height. He arrives on time for this evaluation. He is articulate and sometimes a bit wordy. He maintains cooperation and attention and his speech is communicative.
>
> Mr. Twiggs describes episodes of manic behavior. He says that he becomes a "know it all" and is at times verbally and sometimes physically aggressive. His paperwork also suggests that during manic stages he is somewhat grandiose in that he perceives people as jealous of him. He acknowledges having gotten into fights, and apparently he is also continuing to be somewhat verbally aggressive. He has had two arrests for assaults. He says that one of these was an armed robbery charge which he describes as more of an assault and argument.
>
> He currently says that he has had more problems with depression, including lack of motivation, tendency to withdraw and sleep. Mr. Twiggs displayed some intermittent tearfulness during this evaluation. He does not report perceptual disturbance.
>
> Stream of thought is productive, some rapidity and spontaneity. His

> responses to questions are at times overly inclusive but ultimately reach goal and are generally relevant. His language is not impaired.
>
> Content of thought at this time is without thought disturbance or preoccupations. However, in his responses in the functional report and his history suggest that he has episodes of paranoid suspiciousness accompanied by confrontations during the manic phase and withdrawal during depressions.
>
> Mr. Twiggs presented as of average intellectual ability. He has a very good fund of general information. He is able to think in abstract terms as assessed with his responses to similarities and proverbs. He did not display problems in concentration during this evaluation. He is oriented. he does not complain of problems with memory and these were not observed.
>
> He has a long term history of problems with impulse control, especially in his reports of fighting and argumentativeness during more manic episodes that are now fairly well controlled with Seroquel. His social judgment is at times poor reflecting some episodes of grandiosity, failure to follow through on treatment plans, and alcohol abuse.
>
> \* \* \* \* \*
>
> Mr. Twiggs is having intermittent depression which causes him to be somewhat erratic on following through on activities of daily living.
>
> In the area of social functioning, he has a history of argumentativeness and erratic behavior which has interfered with sustaining relationships with family, friends and in the work place.
>
> In the area of concentration, persistence and pace, he functions best with monitoring to adhere to a daily routine.

*Record* at 252-254. Dr. Lindner noted that Plaintiff has moderate restrictions with respect to the following work-related mental activities; carrying out short, simple instructions, carrying out detailed instructions, making judgments on simple work-related decisions, interacting appropriately with the public, interacting appropriately with supervisor(s), interacting appropriately with co-workers, responding appropriately to work pressures in a usual work

11

setting, and responding appropriately to changes in a routine work setting. *Id.* at 257. Dr. Lindner also stated that "[p]ast [alcohol] abuse has increased [Plaintiff's] unreliability and inconsistency along with mood disorder." *Id.* at 258.

On June 24, 2008, Anthony Galdieri, Ph.D. performed a Psychiatric Review Technique. *Id.* at 259. Dr. Galdieri found that Plaintiff had mild functional limitation with respect to activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. *Id.* at 269. Dr. Galdieri also noted moderate limitations in Plaintiff's "ability to accept instructions and respond appropriately to criticism from supervisors" and Plaintiff's "ability to respond appropriately to changes in work setting." *Id.* at 273. In an RFC Continuation completed the same day, Dr. Galdieri stated:

> The [Plaintiff] alleges disability due to bi-polar disorder and depression. The medical evidence establishes a medically determinable impairment of Bipolar D/O.
>
> The [Plaintiff] evidenced no impairment of memory function secondary to his impairment. His ADL's and social skills are functional. He would be able to make simple decisions. he can exercise appropriate judgment in the workplace. Moreover, he can sustain an ordinary routine and adapt to routine changes without special supervision. Additionally, he can function in production oriented jobs requiring little independent decision making. There are no restrictions in his abilities in regards to understanding and memory and sustaining concentration and persistence.
>
> Based on the evidence of record, the [Plaintiff's] statements are found to be partially credible.
>
> The opinion stated within the report received 6/5/08 provided by Marged Lindner, Ph.D., 6/10/2008, an examining source, has been considered. The residual functional capacity assessment is consistent with the opinion of Marged Lindner, Ph.D., 6/10/2008 contained in the report received 6/5/08. The examining source statements in the report concerning the [Plaintiff's] abilities in the areas of making

> occupational adjustments, making performance adjustments and making personal and social adjustments are well supported by the medical evidence and non-medical evidence in file. Therefore, the report submitted by Marged Lindner, Ph.D., 6/10/208, received 6/5/08, is given great weight and adopted in this assessment.
>
> The [Plaintiff] is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment.

*Id.* at 274. Given this evidence of record - most notably, Dr. Lindner's assessment that Mr. Twiggs' mental impairments may be a result of past alcohol abuse - coupled with the ALJ's Decision, I find a remand is appropriate because the Record has not been fully developed. The ALJ's Decision is deficient in two respects - first, the ALJ's RFC assessment fails to address the role of Plaintiff's mental impairments, and second, the ALJ failed to expound on her determination that the Plaintiff's history of substance abuse was immaterial to her findings. It is incumbent on the ALJ to more fully develop the record with respect to the role that Plaintiff's history of polysubstance abuse has played in the development of his mental impairments. Additional expert testimony and clarification is needed to make a finding as to whether Plaintiff suffers from a disability independent of his past substance abuse.[4]

---

[4] Because I find this issue dispositive, I will not discuss Plaintiff's other claims at length in this Report and Recommendation. I find that the above discussion fully addresses Plaintiff's claims and that the ALJ erred in failing to consider the limitations imposed by Dr. Lindner and Dr. Galdieri and that the Commissioner's finding of not disabled is not supported by substantial evidence. Given ALJ Mande's extensive discussion of her findings regarding the medical evidence of Plaintiff's physical impairments and Plaintiff's RFC, I do not find any merit in Plaintiff's alternate claim that the ALJ erred in failing to impose any manipulative limitations.

## VI. RECOMMENDATION

Consistent with the above discussion it is recommended that the relief sought by Plaintiff be granted and this matter be remanded to the Commissioner for further administrative proceedings to augment the Record as to the effects of the Plaintiff's past alcohol and drug abuse, focusing on whether Plaintiff suffers from a disability independent from these factors.

 S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
Robert N.C. Nix, Sr. Federal Building, Suite 211
900 Market Street
PHILADELPHIA, PENNSYLVANIA 19107-4228

**Chambers of**
**M. FAITH ANGELL**   P:   (215) 597-6079
United States Magistrate Judge   F:   (215) 580-2165

*FAX / MAIL COVER SHEET*

CASE NO.   10-1498   **DISTRICT COURT JUDGE:** BMS
   267-299-5073
-+.0.20

TODAY'S DATE:   December 23, 2010   LAW CLERK'S INITIALS: LFS

**VIA FAX:**

MICHAEL PATRICK BOYLE, ESQ.   215-546-3931

EDA GIUSTI, ESQ.   215-597-4662